SUGG, Justice.
Appellant was denied recovery of oil severance taxes in the amount of $8,506.55 which it had paid and was ordered to pay an additional assessment in the amount of $727.38 by decree of the Chancery Court of Lamar County, Mississippi. On appeal two assignments of error were made as follows:
I.
The Court erroneously held that the twenty-five cent per barrel of oil payment to Bass Development Corporation by two Alabama refineries to get the lessor to remain not only completely out of the act of severance as he had always done but to completely remain out of the market place was subject to severance tax under Section 9417-02 of the Mississippi Code of 1942 as recompiled.
II.
The Court erred in its construction of the contract between the Lessor and two Alabama refineries. That contract carried no vested or enforceable rights to those refineries. The lessee could have sold the oil to anyone including Appellant.
I. H. Bass, et al., as lessors executed an oil, gas and mineral lease to Gulf Refining Company covering 18,536.53 acres on July 15, 1943. Thereafter, as a result of exploration, the Baxterville Field was developed. Gulf posted the field price for oil at $2.00 per barrel and sold the production to Hess Pipeline Company, Inc., who, in turn, sold it to Vulcan Asphalt Refining Company and Seminole Asphalt Refining Company.
Lessors executed a contract with Vulcan and Seminole on May 30, 1963, which recited that lessors were entitled to payment of royalties in kind under the terms of their lease with Gulf ;■ that Vulcan and Seminole were purchasing crude oil from the Baxterville Field from Hess Pipeline Company which included all of the royalty oil of the lessors; that lessors proposed to exercise their right and option to take the royalty oil in kind unless they received an additional twenty-five cents-per barrel for their royalty oil; that Vulcan and Seminole desired to continue to purchase such royalty oil, and the purpose of the contract was to enable Vulcan and Seminole to continue to purchase the royalty oil of lessors from Hess Pipeline Company.
The contract provided that, in consideration of the payment of twenty-five cents per barrel, lessors waived their right to take royalty oil in kind and agreed to pay any additional severance taxes due the State of Mississippi resulting from the payment of twenty-five cents per barrel as a part of the purchase price of such royalty oil; that the total payment by Vulcan and Seminole would not exceed twenty-five cents per barrel regardless of the amount and character of the tax levy; that lessors would receive the twenty-five cents per barrel payment regardless of whether Vulcan and Seminole purchased such royalty oil from Hess Pipeline Company or any other persons; that if Gulf’s posted field price of $2.00 per barrel should be reduced, the twenty-five cents per barrel to be paid by Vulcan and Seminole to the lessors would be increased by an amount equal to the decrease from $2.00 per barrel during the time *434 of such decrease; that if Gulf increased the posted field price for Baxterville crude oil the contract would automatically terminate unless Vulcan and Seminole, within IS days after such increase, elected to continue the contract in full force and effect by giving' lessors written notice thereof.
The contract was for a five year term with an option to renew and was effective June 1, 1963. After June 1, 1963, lessors were entitled to receive the twenty-five cents per barrel payment for the royalty oil. Effective December 1, 1966, Gulf increased the posted field price for Baxterville crude oil to $2.25. Vulcan and Seminole did not elect to continue payment after the increase in the posted field price by Gulf so the contract was terminated.
Although an assignment of the rights of the lessors under the contract does not appear of record, Bass Development Company, Inc. which was owned by F. V. High and Ray Bass received the extra payment from Vulcan and Seminole and paid severance tax in the amount of $8,506.55 on the royalty oil of the Bass lease at the rate of 6 per cent on the additional twenty-five cents per barrel for royalty oil through July, 1966. The State Tax Commission by an order dated June 21, 1967, assessed appellant with additional taxes in the amount' of $727.38 for the months of August, September, October and November, 1966.
Section 9417-02 Mississippi Code 1942 Annotated (1952), levies a privilege tax on every person engaging or continuing within this state in the business of producing or severing oil and provides in addition thereto that the tax:
[S]hall be levied and assessed at the rate of six (6) cents per barrel, or six per cent (6%) of the value thereof at the point of production, whichever is greater.
The tax is hereby levied upon the entire production in this state regardless of the place of sale or to whom sold, or by whom used, or the fact that the delivery may be made to points outside the state, and the tax shall accrue at the time such oil is severed from the soil, or water, and in its natural, unrefined, or unmanu-factured state.
Section 9417-02 Mississippi Code 1942 Annotated (1952), does not levy a tax upon sales of oil produced but the measure of the tax is the value thereof at the point of production. The Legislature in defining value, stated in Section 9417-01 (d) Mississippi Code 1942 Annotated (1952), the following:
d. The word, “value,” means the sale price, or market value, at the mouth of the well. If the oil is exchanged for something other than cash, or if there is no sale at the time of severance, or if the relation between the buyer and the seller is such that the consideration paid, if any, is not indicative of the true value or market price, then the commissioner shall determine the value of the oil subject to tax, considering the sale price for cash of oil of like quality.
Appellant contends that the twenty-five cents per barrel payment received was not received for an act of sale but for an act of forebearance on the part of the lessors in agreeing not to take the royalty oil they were entitled to take in kind.
Section 9417-01 Mississippi Code 1942 Annotated (1952), defines the words and terms used in Chapter 134, Laws of Mississippi 1944, which is the oil and gas severance tax law and paragraphs (i) and (j) provide the following:
i. The word, “producer,” means any person, owning, controlling, managing or leasing any oil property, or oil well, and any person who produces in any manner any oil by taking it from the earth or water in this state, and shall include any person owning any royalty or other interest in any oil or its value, whether produced by him, or by some other person on his behalf, either by lease contract or otherwise.
j. The term, “engaging in business,” means any act or acts engaged in (per *435 sonal or corporate) by producers, or parties at interest, the result of which, oil is severed from the soil or water, for storage, transport or manufacture, or by which there is an exchange of money, or goods, or thing of value, for oil which has been or is in process of being severed, from the soil or water. (Emphasis supplied.)
Although appellants were not lessors, they are engaging in business and are producers as defined by the act; therefore, the twenty-five cents per barrel payment received by them represents a part of the value of the royalty oil of the lessors which is taxable. Lessors agreed in the contract to pay such additional tax, and appellants are bound by such agreement.
The contract entered into by and between the lessors and Vulcan and Seminole had the effect of increasing the value of the royalty oil from $2.00 per barrel, the posted field price, to $2.25 per barrel, and the commissioner was correct in determining that the value of the oil subject to tax was $2.25 per barrel. Gulf paid tax on the posted field price of $2.00 per barrel and appellant paid tax on the excess of twenty-five cents per barrel above the posted field price.
Appellant further contends that if the value of the Bass royalty oil was $2.25 per barrel as assessed by the Tax Commission, it would naturally follow that the market value on Gulf’s seven-eighths of the production would have to be assessed at the same value to make the tax nondiscriminatory and constitutional. The fallacy of this reasoning is that the value of the other oil was the posted field price of $2.00 per barrel, but by virtue of the contract between the lessors and Vulcan and Seminole, the value of their royalty oil was increased to $2.25 per barrel. The effect of this contract did not increase the value of the other oil produced, so there was no discrimination.
The matter resolves itself to the simple proposition that appellant received twenty-five cents more for the royalty oil produced under the Bass lease by virtue of the contract with Vulcan and Seminole and therefore was liable for tax on the additional twenty-five cents per barrel.
Affirmed.
RODGERS, P. J., and INZER, SMITH and ROBERTSON, JJ., concur.